You can see everyone. It looks like all the microphones are working. If at any time you have trouble, counsel, if at any time you have trouble hearing or if you've got a technical problem, just wave your hand, get our attention, and we'll stop and and try to address that. All right, Ms. McKean, would you announce our calendar for this morning? The case for oral argument today, Tuesday, September the 26th, 2023. Case number 22-3297 from Eastern Missouri, Curtis Stewart v. Anne Precythe. Very well, Mr. Johnson for the appellant. Yes, good morning, Your Honor. Ben May, who is the court, Jeff Johnson for Appellant Director Precythe. The district court must be reversed for at least two reasons. First, there is no precedent holding that an administrative segregation security level, two hours on a restraint, that violates an inmate's constitutional right to get free from brutal and mutual punishment. Secondly, an inmate cannot turn a responding superior claim that is prohibited under this court's precedent into a policy claim merely by a conclusive allegation. Indeed, moving to what precedent is in place or what two district courts in the survey have found in cases involving longer periods of confinement to restraint benches, that there was no constitutional violation at all. That is the opposite of a controlling case or a robust consensus of cases or a persuasive authority that the allegations establish a violation of the constitutional right. As a result, no case has placed the statutory constitutional question beyond debate at the time of the alleged violation and the district court was wrong to to find that there was a constitutional right that had been violated without such precedent. When confronted with Lockhart and Walker, at least the two district court cases that were cited in both the district court and before this court, Mr. Stewart claims that they are actually inapplicable. That's at page 11 of his brief. Even if that were true, failing to point to a factually similar case by a constitutional violation is fatal to this case. Counsel, I have a question about your position on that. We're really early in this case procedurally, so we've only got the complaint. Would you agree? Yes, your honor. The case is a little, is bifurcated as I understand it, but for director Precite that the moment this is the procedure posture is on a judgment from motion on the papers. So in the in the complaint there's an allegation that this the actions of the jailers or the the guards was was malicious and sadistic. Would you agree that that's alleged? Your honor, I will, I agree that the that the complaint at various points talks about the actions of subordinates being malicious and sadistic. I think that further, I'm sorry. Well, well I guess, I guess what I'm getting at is so long as there is at least a plausible claim of malicious and sadistic conduct. I think they make allegations of taunting and ignoring complaints about physical pain. How, if we're going on the clearly established prong, help me understand how it wouldn't be clearly established that that a jailer couldn't be malicious and sadistic in their conduct toward a jailer. I mean, I'm sorry, the jailer's conduct toward the inmate. I apologize. No, yes, Judge Kelly. Judge Kelly, I understand your concerns. I have two responses for you. First is merely pleading elements such as we all understand that under 12A Iqbal, but they have to give facts rising to the level to make the claim plausible, right? And then secondly, I would again point out that we are talking that if we look at the complaint, and I have it here, this is our doc number 76 at page three. The only, the only allegation against the defendant preside this name is in paragraph 12, right? Well, let's, can I just, just for the sake of focusing the question, focusing on the actual, the actors, and I understand you have a separate argument about whether your client is responsible for the, for a policy, but the underlying conduct, are you asserting that the complaint does not sufficiently allege facts that would on their face at least plausibly rise to the level of malicious and sadistic? We're not, we're not here to make representations about the individual acts as to individual officers that is open in the district court at the moment. As far, but the issue here is that we look at the policy is about taunting. It does not say the policy, it only says that it's about handcuffing and chaffing prisoners confined in administrative segregation units to a steel bench in a sitting hogtie position for hours, right? What if, what if, what if a reasonable inference from that given the other allegations was that the way the policy was actually carried out was in the way that the plaintiff alleges in the complaint, let's just assume that that's inference. Would that then get past this judgment on the pleadings? Well, I think the complaint defeats that on its own, right? Because the complaint doesn't say that they're, that they are, that they are taunting for a policy. They're not, the complaint doesn't say that, that they are denying bathroom requests or, or any, or anything else for the policy, right? The only policy that he alleges is that, is that they were, that being on a restraint bench for, for a couple hours is cruel and unusual punishment as to defendant preside. And I think this actually goes to my second point a little bit further, your honor. This is an attempt to, to go across the court's clear line about, about excessive force, excessive force cases and whether or not respondent superior liability is attached, right? By saying that, oh, it's a policy, and then trying to infer all the actions of the, of the, of the officials that are more than two layers removed, right? From direct, from Director Priestley. She's the director of the entire Missouri Department of Corrections. Counsel, I have a, I have a basic question, which is, what exactly is the policy being challenged here? I know that there is the restraint in moving people between administrative, you know, between cells, and then there's the idea of, what is it, skin-on-skin contact when they're restrained. But I want to hear from both counsel actually exactly what the policy that she promulgated that, that is at issue here. So, in our procedural posture for motion and judgment pleadings, we don't have, you know, sort of this clear guideline from, from the plaintiff as to what policy in particular. As the court is well aware, you know, State Department of Corrections have very long and lengthy policy manuals. I can tell you that there is a policy, there is a policy book that, that describes what happens in these exact situations. But that is, you know, outside sort of the record and the court's purview at the moment. As far as I can tell, from the motion and the judgment of the pleadings, the only policy that is alleged is in, is in paragraph 12, which is that, that, handcuffing and shackling prisoners confined in administrative segregation units to a steel bench in a sitting hog-tied position for hours is unconstitutional. That's my understanding of what, of what the claim is in this particular case. Is, is the absence of a, of, of clarity as to the policy a problem for the State on judgment of the pleadings, or is it a problem for the plaintiff that we don't know exactly what it is that, that I think it's, I think this, I think this is a problem for the plaintiff in Precinct. But, and just to, again, to glom on to, to Judge Kelly's point and to your point, when we're talking about why we're responding, so in the, the District Court cited the case Jackson v. Gutzmeyer, right? Jackson v. Gutzmeyer has the, has the line citing this court's precedent saying that an officer may be held liable only for his or her use of excessive force. That is the bright line rule in the Eighth Circuit. I don't believe this court has previously authorized such a claim against a Director of the Department of Corrections, and it's for the reasons that are stated in Jackson. Suppose though, and this is, this is why I'm asking the question, suppose the policy said every time a, an inmate steps out of line in the cafeteria line to get food, you need to beat them senselessly, senselessly with a, with a billy club or whatever, what, the nightstick, with the nightstick. That would seem to be excessive force, and wouldn't that violate clearly established law to beat somebody with an inch, within an inch of their life for stepping out of line in the cafeteria line? So you're not to, not to fight your hypothetical. Yes, you could have policies that are promulgated that would be, that would be constitutionally unreasonable. But that is not the, but what we have to do in this case is look at what is the policy alleged on the complaint, and what the complaint has said is that by merely putting on a restraint bench for a few hours in the administrative segregation unit, this is not the general population level for prisons, right? Administrators, you have to already pose some kind of danger to being moved into administrative segregation, and here what we have is, is, is, is not a series of events. We have two discrete, uh, two alleged discrete incidents of putting someone on a, on a restraint bench, uh, for roughly two hours. Suppose we had two incidents of beating somebody senseless, senselessly in the cafeteria line. To back to my hypothetical, I know you don't want to answer it, but I'm gonna, I'm gonna kind of bring it back. Back to your hypothetical, uh, in that case the prisoner would have alleged a policy of do, of, uh, having beating them within, uh, into, within, you know, moments, inches of their life, right? In which case that policy may go forward, potentially. Uh, I think it would still actually, under the excessive force problem, I think the, I think under this court's presence in excessive force, and in Jackson where it says, you know, cases regarding prison violence, for instance, it can be difficult to demonstrate the warden's knowledge of or connection with individual incidents between guards and what that tells us is that, uh, is that the director of the Department of Corrections is, uh, you know, unless they have allegations about what the policy is, uh, how it's unconstitutional, you can't just say that there's a policy and then link it up to two discrete, uh, alleged incidents that happened in the jail. And this, this sort of seems to be the, the kind of situation where you're sort of talking about, um, facts that maybe might come out in the summary judgment record. In other words, we are really at a bare bones here. And some of the points that you're making are, are well taken. But is, is that, is, is that the argument for the next, the next step in this, um, case? Uh, no, your honor, the, uh, the plaintiff, this is what motion of judgment on the plebs is for, right? It's for when they allege, uh, whatever the policy is, they then also have to And in Jackson v. Nixon, where the court is noting these issues of that, that you're talking about, which is like, what about the next set of summary judgment where, oh, you would, you know, to pose someone or you would, uh, have discovery and you could figure out like, you know, what's the knowledge of connection or something like that, that still has to be pledged. And Jackson v. Nixon denied, uh, or sorry, granted qualified immunity in that case. Uh, and again, uh, with the clearly established rule, we do sort of have look at this court's presidency. When has this court, uh, actually found, uh, uh, non-constitutional, I'm sorry, the constitutional policy. Uh, and in Jackson, it was about, it was about the, uh, first amendment establishment, uh, right. Where, where they were, uh, actions allegedly taken by the director, uh, that, you know, if you were, if the inmate withdrew from certain substance abuse program, it affected their early beliefs. Uh, you can certainly see in other areas of, uh, of sort of like 1983 litigation where, you know, a policy such as what Judge, uh, Judge Strauss says, you know, would allow you to go forward. Well, counsel, let me interrupt you to ask a question. Uh, for me, a fair reading of the complaint is that this, the plaintiff is, is challenging what he says is a, is a policy promulgated by your client. Um, we, under which he was placed on a steel bench, handcuffed, handcuffs behind his back, and shackled in a sitting hogtie stress position for over two hours, that's what he says happened to him under this policy. So, so my question is, what, what is it, what is this, this term hogtie? What does that mean? Does that have a legal meaning? Do the cases elaborate and, and define that term? What, what is that, that term? And what do, what do we, uh, how, how should we define it as we read it in the, in the complaint? You know, I think that's an excellent question. I think that also goes to the fairly established point. I haven't seen where, uh, uh, in the cases where like the hogtie is actually explained. Uh, but that goes to the point that we need to have some sort of actually similar case or robust census of cases, uh, that say that, no, this is not allowed. Uh, you know, even, even in, uh, in, you know, uh, in 1983 litigation, if you had, uh, cases that said, oh, you know, uh, on the level of restraints, you know, everything above this would be unconstitutional or something that, that might provide notice. But at the moment, uh, I think that's completely failed to come forward with any case. And we have two district court opinions that, uh, that have found that there is no constitutional violation at all here. So what is, what, what do you think the term hogtie means? Uh, I am not certain what it means in this case, because when I read in sitting hogtie position, in a sitting hogtie position. And then when I look at, uh, uh, look at paragraph, uh, 1920 through 22, uh, it doesn't, it does not tell me, you know, what that means, uh, at best, uh, I think I actually really don't want you to speculate as to what the hogtie position would be. Uh, and what we do know is that he is seated on the bench, right? Which if, you know, if you were to attend a rodeo, so to speak, then, you know, if you'd say a Catholic hogtie, you know, that they're not sitting in a city that they're on their back with their hands and feet together. Uh, but here they are at least sitting on the bench, which I think would, uh, which would take us out of the realm of like what the rodeo sort of example would be. All right. I see that I've expired my time. So thank you. That would be asked to reverse the district court or reserve a little bit of or have some time for a little if the court requires. Thank you, Mr. Johns. Mr. Heine, you may proceed when you're ready. Thank you. May it please the court. I would ask that this court uphold the district court's opinion, um, and find that director Precite is not entitled to qualified immunity strictly at this stage of the litigation process. I'm going to circle back around to some questions that came up and answer those right off the bat. The policy I would state that is being referenced is a policy to, which has come out through all this, is this shackling and handcuffing to the bench in a stress tied position. And I'll also in turn answer the way hog tied was meant to be used. So the, the prisoner's hands are behind their back. Then what's done is they're handcuffed behind their back. Then the handcuffs are placed on their legs, which are then pulled up more towards the bench. So what it's doing is it's putting stress on their arms, stress on their legs, and then pulling those together to handcuff to the bench further, which is giving this sort of, of a pig being hog tied legs to hands. Just the bench is the middle ground. Okay. Now the description that you have just given, the factual description that we don't find that anywhere in, in the complaint, do we? I would agree with that. And I was only adding that factual description as asked by the court. I would concede though, that the actual definition or description of sitting hog tied is not complaint, not contained in the complaint. Okay. So if it's not there, if, if this positioning that you described, very painful position with the, with the arms and legs secured in a particular way. If that's not set forth in the complaint, then, then all we have left is the, the claim is that under a policy, the athlete was placed on a steel bench and handcuffed with his hands behind his back for around two hours. Well, I do believe contained. We have a lot of cases that talk about much, much longer periods of time than that with, with prisoners, handcuffed or shackled. I will say, I do believe contained within the, the complaint is the term stress, putting stress on the body parts and things of that nature. And then to get to the other cases, specifically. Before you go there, before you get to the other case, I want to follow up on Judge Shepherd's question, which is the complaint does contain stress and hog tie. But I, but I think Judge Shepherd is right. Not in the context of the policy. This is why I kept asking questions about the policy, because you've described the policy as perhaps, you know, shackling on a steel bench with handcuffed behind your back, but that's different from what these officers did in, in hog tying them. And so what I'm trying to ascertain is what we think the policy is, because if she's only authorized handcuffing behind the back for two hours on a steel bench, then I think Judge Shepherd is right. That's not a clearly established violation. If on the other hand, it's the hog tying and all the other things that these individual defendants did, then it's a much harder case. And I guess to answer that, I would say that the, the reasonable inferences from the complaint is that the policy being referenced is the actions being taken by the officers to answer your question, Your Honor. And specifically to kind of go back to what was stated by Appellee, I do want to correct it. What was mentioned was Director Precythe was only named in paragraph 12, where that's not factually accurate. If you refer to paragraph 42 in the appendix on page six, it also says defendant Precythe at all times relevant, authorized the policy and a practice of excessive use of force, then going on to mention the sadistically and maliciously. But that's a legal conclusion. I think 42, we have to disregard to some extent because that seems to be a legal conclusion. It doesn't tell us what the policy actually was. I agree with you that it is a legal conclusion placed at the end, which would then give reasonable inferences to everything beforehand to lead to that conclusion, if that makes sense. I'm going back to this this question of these cases that I'll first start with whether or not a director can ever be liable. I would state yes, and I would state to the Jackson v. Nixon case, which I'm reading directly from the opinion that states to state a claim against Warden Burgess, Jackson must Jackson must plead facts to show that Burgess was directly involved in making, implementing or enforcing a policy decision. So I think the act of showing that an individual may. Enforced or created an opinion that that would then be where we are dealing with. And the main thing I focus on all of this is at this point, it's just is there sufficient facts being played? The cases that were cited, for example, Lockhart v. Reese is a summary judgment motion. That's not a judgment on the pleadings that's being reviewed. It's a summary judgment motion, which I think a summary judgment motion is completely different than what we're dealing with here, because then we're getting into what are the facts that led to placing the individual on the bench. When you're looking at the facts that led to the individual placing on the bench, you're taking other things into account and not just taking into account the actual complaint. So I will say a summary judgment motion compared to a judgment on the pleadings are two completely separate things. And so my disagreement with Lockhart v. Reese lies in the fact that I don't think you can take the same comparison where the court found that that sitting on a bench is not unconstitutional because they specifically looked into what led to getting on the bench. And they looked at the disobedience and the disruption and whether or not placing the bench is what is appropriate to pretty much keep peace in the prison. At this stage, you can't look at that and you can't look at anything that's going on because we're strictly going off of the face of the complaint. Then in Walker v. Lawson, which is the other district court opinion being cited, that's a case where it doesn't come out and specifically say what the denial was for the judgment on the pleadings there. But a main issue in that order by the court was that the plaintiff did not allege physical injury. The court found that in that case, there was not a sufficient level of force being pled to show that physical injury could have occurred. Whereas here in paragraph 14 of the initial complaint, it alleges that the plaintiff suffered and continues to suffer physical injuries to his joints and nerves, which cause numbness, soreness, and damage to his joints and nerves. I think that's the difference between that case and now this case. Once again, I get that there's the question of is this or is this not an unconstitutional act? I would just state at the early stage what we're looking at too and what the district court found in this case was what's being alleged as a constitutional violation is excessive force. Excessive force is the constitutional violation and then obviously when we're looking at this is was that clearly established at the time and excessive force has been clearly established for many decades. So I think looking at the actual complaint that on its face would show that it's sufficiently pled to kind of go off of all of the other cases and saying that no case has been issued so far, I don't believe that any 8th Circuit case has been cited by an appellant showing that there has been a judgment on the pleadings whenever this type of actions have been alleged. All of the cases pretty much are summary judgment that are being used to then say, well, this is the same thing. I was going to ask, does the term hog tie have an established meaning? You mean by the 8th Circuit? 8th Circuit, by any court, can we go someplace and look up what is defined by the term hog tie? I'm sorry, your honor, I didn't mean to cut you off. I do not know of any court opinion defining hog tie, so then I would just rely upon the basic definition of hog tie, which I would believe to mean they come to a point where everything's pulled to one position, if that answers your question. Why do you think that's what it means? What am I relying upon? Right. To be 100% honest with you, your honor, I'm just relying upon what I know and growing up around the scenario of someone's hog tie. That a hog tie to me means that if we're using a pig as an example, the pig's front feet and the pig's back feet are brought together and then tied. Well, don't you think it would have been better in drafting this complaint to actually describe the physical configuration? Excuse me, Judge Shepard, we lost counsel. We lost the AG. Okay, why don't you stop the clock? Okay. And do you want to try to get him, do you want to see where he is? Yes, hold on a second. I've got some sunlight on the lens of this camera that's creating that streaking there. Judge Shepard, our IT professional says it's the sunlight coming through, the blind maybe? Counsel for Director Preside? Yeah, that's what it is. He is now joining us. For sure. Is this the AG's office? We're looking for Mr. Johnson. Yes, I apologize to the court. I don't know what happened. My computer just randomly shut down and I've just tried to call, so I apologize to the court. Okay. Mr. Johnson, can you hear us okay? Yes, I can hear you. So, do you have an ability to get back online with your camera? No, I'm afraid not at this exact moment. Okay. I don't know what's going on with the camera. If you can hear us, why don't we proceed? That's the main point that you're able to hear, I would think. Is that, do you have any objections to proceeding in that fashion? No objections, Your Honor. I appreciate the court's grace. All right. Okay, let's resume the timer and Mr. Hind, you can continue. I think, Your Honor, you were asking me, I believe your question was, would it have been beneficial to give a definition of hawktide? Not a definition, but a precise description of what's complained of here. And yes, I would agree with you that that would have been helpful. Counsel, I just want to ask you one question. This is what's troubling me. It's easy to get to the individual officer, so I'm having a harder time getting to precise. So, I have a related question, which is, let's suppose that everything you say in paragraph 12 is true. To get liability for excessive force, don't you have to show sadistic and, what is it, malicious and sadistic conduct on precise part? And so, even if the individual officers were malicious and sadistic, how do you get to the fact that precise this? And I just want you to make that connection for me. And that is where I think we view differently on paragraph 42, which is that conclusion where it has her named and then it has sadistic and maliciously in the units. And the inference from that paragraph is meant to be that director precise would know that the act of doing this, tying them up. And once again, I'm kind of going back to what is alleged in there. There's nothing saying that these people are placed on this bench for just cause. It's being alleged that they're placed on the bench for the purpose of excessive, cruel, and unusual punishment. Well, here's where we get back to what Mr. Johnson said, opposing counsel said, which is that these are the worst of the worst. They're in administrative segregation, or at least they've acted up. Let's do, let's leave it at that. I think that's fair. And so, then the question is, is maybe she was doing out of a safety, you know, maybe it's overboard, but she was doing it out of a safety rationale, not because she was trying to be mean to these individual prisoners or sadistic to these individual prisoners. I just want to give you that's a reasonable inference. In other words, I want to give you a chance to respond to that. Yeah, your honor, I would agree with you. I think that's a great thing to bring up at a summary judgment motion where that actually would be brought out and that information would be brought out. But on its face, if we take it on its face and take the reasonable instances, inferences and take what's alleged is true, I don't think you would make that conclusion. Because it is being alleged, it's being done for the purpose of punishment. So, that would be my answer to that. So, does it, is the sadistic and malicious intent just kind of imputed to her because she's approving the policy? Like, she would have to know what the policy is. I guess, can you know of this policy and enforce it and want your guards to carry it out if, in fact, they're carrying it out in a sadistic and malicious way without the director being malicious and sadistic? I guess, is there daylight, as Judge Strauss has suggested, between those? Can you help me sort of work through that? I mean, I would state, I think the difference is that, you know, the bench is being used to place someone on it. So, we know that it's whenever you have some inmate, and the policy of what I'm getting at is that when you're placing them on the bench, you're sitting them, and this is, I believe, alleged in the complaint, that their hands are shackled to the bench and that their the hands and the legs. So, I would get that the fact of whenever you just need to move someone or you need to place an individual, the choice of using that as where to place them as opposed to any other means, I think that that is where I would get at the sadistic, the malicious. Whenever I would argue, there would be many other means. So, to make this a policy that anytime someone needs to be, I'll call placed and holding, this is what you are to use. I would say the act of making a policy of that, choosing to use that form of holding someone is what would get to the sadistic and malicious. And before your time's up, counsel, could I ask just whether you think that the conditions of confinement claim is still in the complaint that you filed? Is that just not in the amended complaint? I would say that we were not making a conditions of confinement claim. It was mostly or it was solely an excessive use of force, which is why I did not address that. Thank you. And so, I would just ask that this court uphold the district court's finding in ruling. Thank you. Okay, how much time does Mr. Johnson have? Nothing, he already used it all. Okay, Mr. Johnson, we asked quite a few questions. Take a minute and respond if you'd like to. Thank you, your honor. So, very quickly, I'm going to start back to where counsel is describing the actual restraint policy that they're challenging. They're saying that if you are seated on a bench with your hand shackled behind you, and then also if your feet are then shackled to the bench, right, that is the exact same factual scenario that came up in Walker. If we look at Walker, it says that the officers, that he was seated on the bench, hands behind his back, then the officers had directly used force, that's a quote, to his legs and pulled the shackles to put him in an awkward and uncomfortable position for six hours and 19 minutes. And the district court judge there didn't find that there was any constitutional violation at all. And I think that to the extent that we were talking about whether this is hog tying or whatever, I think what counsel's representation is, is vastly different than just that they are, like some stress put on whatever you're due to shackling. But that is always the case when we're talking about safety and security. Very quickly, I believe Judge Kelly asked about whether or not this was the purpose for punishment and whether or not statistically and maliciously can get us there. I think if we look at the complaint, what we do find is that even if we were to consider these two alleged incidents as part of some kind of policy, the reality of it is that every time that the plaintiff was taken out of the cell was either at his request for his safety or at the request of someone else for their safety. So I think that even if the plaintiff... Mr. Johnson, you've used a little more than the allotted time, which is okay, but I think we understand the arguments very well. And counsel, the court appreciates your arguments and the case is submitted. The court will render a decision in due course. Thank you, your honor. Mr. McKee, do we have anything else on the calendar this morning? No, you don't, your honor. Is now exiting. All right. Very well. Court will be in recess until further call.